UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Percy Squire Co., LLC, *et al.*,

    Plaintiff,s

v.

The Federal Communications
Commission,

    Defendant.

Case No. 2:09cv428

Judge Michael H. Watson

## **OPINION AND ORDER**

Before the Court are the following:

1. The May 29, 2009 Motion of Plaintiffs Percy Squire Co., LLC and Percy Squire (hereinafter collectively "Plaintiffs") for Temporary Restraining Order (Doc. 3).

2. The June 12, 2009 Motion of Defendant The Federal Communications Commission (hereinafter "FCC" or "Defendant") to Dismiss for Lack of Jurisdiction (Doc. 11). Plaintiffs filed a Memorandum in Opposition (Doc. 12) on July 1, 2009. Defendant filed a Reply Memorandum (Doc. 13) on July 10, 2009.

3. The July 13, 2009 Second Motion of Plaintiffs for Temporary Restraining Order (Doc. 14). Defendant filed a Memorandum in Opposition on July 15, 2009 (Doc. 15).

4. The July 15, 2009 Motion of Defendant to Strike (Doc. 15).

## I. FACTS AND PROCEDURAL BACKGROUND

Dr. Glenn Cherry, Plaintiff's client, is a former shareholder of TAMA Broadcasting, Inc. (hereinafter "TAMA"). TAMA is currently in a state administered receivership. On February 26, 2009, the FCC denied Dr. Cherry's objections and approved the transfer of the TAMA licenses to the Receiver. As a result, the Receiver is the lawful holder of the licenses.

The Receiver is in the process of selling the TAMA licenses for the benefit of the corporation's creditors, and two sale applications are pending at the FCC. Dr. Cherry filed an objection with the FCC to the proposed transaction. Dr. Cherry objected to the Receiver's sale of the stations because the proposed purchaser is a subsidiary of TAMA's main creditor, Zwirn Special Opportunities Fund, L.P. (hereinafter "Zwirn"). Specifically, Dr. Cherry asserts, prior to the receivership, Zwirn exercised unauthorized control over TAMA and engaged in a conspiracy to ruin TAMA financially and force it to liquidate its license holdings. Dr. Cherry pursued these claims in a class action pending in the United States District Court for the Middle District of Florida (hereinafter "Middle District of Florida"), *Cherry v. D.B. Zwirn Special Opportunities, Fund, L.P.*, Case No. 8:09cv33.[1]

Additionally, Dr. Cherry filed an administrative complaint with the FCC, claiming that Zwirn exercised unauthorized control over the operations of TAMA in violation of FCC rules. The FCC Enforcement Bureau investigated the complaint and received responses from Zwirn to the FCC's letter of inquiry regarding the allegations. On

---

[1] Dr. Cherry resides in the Middle District of Florida.

February 17, 2009, the FCC entered into a consent decree with Zwirn and TAMA in which the parties made a voluntary payment to the Treasury of $18,000, but no finding of liability was made. Based on its investigation, the Enforcement Bureau dismissed Dr. Cherry's administrative complaint.

On October 16, 2008, Plaintiffs requested, pursuant to the Freedom of Information Act (hereinafter "FOIA"), records from the FCC. Specifically, Plaintiffs seek documents provided to the FCC by Zwirn in connection with the aforementioned investigation.

On or about March 1, 2009, William Knowles-Kellett, a FCC attorney processing the FOIA request, informed Mr. Squire there are tens of thousands of pages of documents responsive to the request, that all of the documents were originally submitted to the FCC under a request for confidentiality, and that the FCC must first rule on the confidentiality requests before producing any documents. Messrs. Knowles-Kellett and Squire agreed to a phased response, in which the FCC would first determine the confidentiality of a portion of the requested documents, and then produce any documents in that group determined not to be protected as confidential.

On April 9, 2009, Dr. Cherry filed a FOIA action against the FCC in the Middle District of Florida (hereinafter "Cherry case"), *Glenn W. Cherry v. The Federal Communications Commission*, Case No. 8:09cv680. Like the present Complaint, the complaint in the Cherry case sought the release of the Zwirn documents under FOIA and asked the court to enter a temporary restraining order and preliminary injunction against the FCC to prevent them from acting on the pending radio station assignment applications filed by the Receiver until the requested documents were produced.

The FCC moved to dismiss the Cherry case arguing, *inter alia*, Dr. Cherry was not the FOIA requester and, thus, lacked standing to challenge the FCC's response to Mr. Squire. The court denied the temporary restraining order and stayed consideration of the preliminary injunction until the Court determined the jurisdictional issues.

On May 28, 2009, the Magistrate Judge issued a Report and Recommendation in the Cherry case concluding that Dr. Cherry did not have standing. Dr. Cherry filed objections to the Report and Recommendation, which are currently pending before the District Judge.

Plaintiffs filed this action on May 29, 2009. A comparison of the complaint in this action to the complaint in the Cherry case reveal they, for the most part, are the same.

On June 4, 2009, the FCC issued its First Phase response letter (hereinafter "First Phase letter") to Mr. Squire regarding what documents qualified for confidential treatment and which did not. The First Phase letter concluded that many of the requested documents, some with redactions, should be released to Mr. Squire. Additionally, the First Phase letter informed Mr. Squire that administrative review of the confidentiality determinations may be requested by either Zwirn or Mr. Squire. The First Phase letter also informed Mr. Squire that, to date, the FCC has incurred $5,725.00 in costs associated with processing the FOIA request.

Shortly after receiving the letter, Mr. Squire emailed Mr. Knowles-Kellett asking that Mr. Knowles-Kellett contact him to discuss the next phase. On June 10, 2009, Mr. Knowles-Kellett called Mr. Squire and they discussed the next step in the FCC's phased response to the FOIA request. Mr. Knowles-Kellett informed Mr. Squire that the FCC intends to produce the documents described in First Phase Response letter in the near

future if Zwirn does not file an appeal from the FCC's ruling regarding confidentiality. Mr. Knowles-Kellett further informed Mr. Squire that in the next phase, where there are approximately 40,000 documents, the FCC estimates that the cost to search for, copy, and produce the documents is about $1.00 to $2.00 per page. He also informed Mr. Squire that, given the high expense, the FCC requires an advance payment to process the request for these documents. Mr. Squire stated that he hopes not to pay $40,000 in the next phase and asked to discuss further the possibility of narrowing his request. Mr. Squire said that before making that determination he would like to wait and see the documents described in the FCC's June 4, 2009 response. Messrs. Knowles-Kellett and Squire agreed to resume their discussion on the scope of the FOIA request after it is determined whether or not Zwirn would seek review of the confidentiality ruling.

## II. ANALYSIS

### A. Standard of Review

Defendant seeks, pursuant to Fed. R. Civ. P. 12(b)(1), an order from the Court dismissing this action for lack of subject matter jurisdiction.

"A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action." 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1350, at 194 (2d ed. 1990). The plaintiff bears the burden of proving that the court does in fact have jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134-35 (6th Cir. 1996).

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties, either a facial or factual attack. Currently, Defendant is mounting

a factual[2] challenge to Plaintiffs' assertion of jurisdiction. ". . . [W]hen a court reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. Ohio 1990). "When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." Id.

Courts, in resolving disputed jurisdiction facts, may permit affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir. 1983). Thus, "[w]hen considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence the parties submit." *BP Care, Inc. v. Thompson*, 337 F. Supp.2d 1021, 1025 (S.D. Ohio 2003),

### B.     Exhaustion of Administrative Remedies

Defendant argues Plaintiffs failed to exhaust their administrative remedies and, as such, are not entitled to initiate FOIA litigation in this Court. Defendant argues Plaintiffs and the FCC agreed to a phased processing of the FOIA request in March, 2009. Since then, the FCC issued its first phase response and is waiting to see if any objections are filed. Additionally, after the First Phase letter, the FCC and Mr. Squire

---

[2] The Court notes that on page 9 of Defendant's Motion to Dismiss it states "Defendant's motion . . . is a facial challenge . . . ." However, Defendant proceeds to set forth the standard of review for a *factual* challenge. "In such a motion, Defendant does not challenge 'the sufficiency of the pleading's allegations,' but instead challenges 'the factual existence of subject matter jurisdiction.'" As such, the Court concludes Defendant's statement of a "facial" challenge was a typographical error and it is asserting a factual challenge.

agreed to further work together to narrow the requests in order to reduce the cost to Mr. Squire. Accordingly, Defendant contends as Plaintiffs agreed to a phased production, and have been participating with the FCC in further modifications of the request, Plaintiffs must wait until the agreed process is completed before initiating any litigation over alleged inadequacy of the production.

In response, Plaintiffs contend Defendant, despite acknowledging receipt of the FOIA request and promises to respond, failed to respond until the filing of this action. Plaintiffs maintain Defendant failed to respond within the requisite time limits. As such, Plaintiffs argue Defendant's argument with respect to exhaustion is without merit.

Generally, exhaustion of administrative remedies is required prior to filing suit in federal court. This requirement provides the agency an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *See McKart v. United States*, 395 U.S. 185, 194 (1969). Additionally, it permits the top managers of an agency to rectify errors made at lower levels and, thus, eliminate unnecessary judicial review. *See id.*

The FOIA statutes provide an administrative appeal process following an agency's denial of a FOIA request. Further, courts consistently hold that FOIA requires exhaustion of the appeal process before seeking relief in the courts. *See Dettmann v. U.S. Department of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364 (D.C. Cir. 1985). Failure to exhaust all administrative remedies will result in dismissal of an action for lack of subject matter jurisdiction. *Dettmann*, 802 F.2d at 1477.

5 U.S.C. § 552(a)(6)(A) provides the guidelines which an agency must follow after receiving a FOIA request:

> (i) determine within ten days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and [the agency] shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and
>
> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination . . . .

Moreover, 5 U.S.C. §552(a)(6)(C) provides for constructive exhaustion if an agency does not timely respond to a FOIA request:

> Any person making a request to any agency for records under paragraphs (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. . . .

Notwithstanding the foregoing, an agency is able to cure an untimely response by responding to the FOIA request before suit is filed. "The ten-day constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request. But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 63-64 (D.C. Cir. 1990).

Upon consideration, the Court concludes Plaintiffs failed to exhaust their administrative remedies prior to filing this action. While Defendant did not initially respond to Plaintiff's October 16, 2008 FOIA request within ten days, Defendant cured the failure in March, 2009, when Messrs. Knowles-Kellett and Squire agreed to a phased response for the tens of thousands of pages of documents which are responsive to the FOIA request. Moreover, the evidence reveals the FCC continues to work with Mr. Squire to satisfy the FOIA request.

Finally, the Court notes that while Plaintiffs stress the urgency of this request due to the pending radio station assignment applications filed by the Receiver with the FCC, the fact Plaintiffs waited six months to file an action belies the stated urgency.[3] "A requester who waits long past the ten-day deadline for the agency's response and then brings suit without administrative appeal has by his action indicated that time cannot be of the essence." Oglesby, 920 F.2d at 65.

Accordingly, the Court lacks subject matter jurisdiction with respect to Plaintiffs' FOIA request.

### C. Standing

Defendant next argues the Court should deny the request for injunctive relief barring the FCC from acting on the pending assignment applications listed in the Complaint. Specifically, while Defendant acknowledges Mr. Squire is the real party in interest in the FOIA document request, Defendant argues Plaintiffs are not parties to the assignment proceedings and have no personal interest in the licenses at issue.

---

[3] The Court is referring to the Cherry case which was filed on April 9, 2009, since this is the first litigation regarding the October 16, 2008 FOIA request.

Defendant asserts Mr. Squire is merely the attorney for Dr. Cherry, who is the individual asserting an interest in the licenses and who claims that his right to review of the licensing decision will be harmed without access to the requested documents. As such, Defendant maintains Plaintiffs, lacking any legally cognizable personal nexus to the licensing proceeding, do not have standing to seek injunctive relief against FCC action on the assignment applications.

In response, Plaintiffs contend they are persons with actions currently pending before the FCC. Plaintiffs assert their ability to prosecute these actions are prejudiced by the refusal of the FCC to disclose the requested documents.

"Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. American United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982). "The standing doctrine limits the judicial power of the federal courts to parties who demonstrate 'injury in fact.'" *Id.* at 473. A party establishes an injury in fact by meeting the following requirements:

1. he personally suffered an actual or threatened injury as a result of the defendant's alleged illegal conduct;

2. the injury suffered must be fairly traced to the defendant's conduct; and

3. a favorable decision will likely redress the injury suffered.

*Allstate Ins. Co. V. Wayne Co.*, 760 F.2d 689, 692 (6th Cir. 1985).

Additionally, separate and apart from the aforementioned mandatory jurisdictional prerequisites, courts recognize "prudential limitations on the rights of parties to litigate in the federal courts [which] have been classified under the general

rubric of 'standing.'" *Id.* Arguably, the most prominent of the prudential limitations is that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Courts reason that the holder of the rights either, does not want to assert them, or is able to enjoy them regardless of the success or failure of the litigant and, generally, third parties are the best advocates of their rights. *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976).

Turning to the case at bar, the Court conclude Plaintiffs do not have standing with respect to their request for injunctive relief barring the FCC from acting on the pending assignment applications listed in the Complaint. Plaintiffs have not, and will not, suffer an injury if the FCC acts on the pending assignment applications. Plaintiffs do not currently, and never had, an interest in the licenses. Thus, Plaintiffs are unable to establish an injury in fact. Furthermore, Plaintiffs are barred by the aforementioned prudential limitation. They are not asserting their own legal rights and interests, but instead are asserting the legal rights and interest, potentially[4], of Dr. Cherry, a third party. Therefore, Plaintiffs lack standing to request injunctive relief barring the FCC from acting on the pending assignment applications listed in the Complaint.

As Plaintiffs lack standing, the Court will not analyze Defendant's final argument that the Court does not have subject matter jurisdiction as the Communications Act of

---

[4] The Court is not asserting the conclusion that Dr. Cherry is necessarily the party who could challenge the pending assignment applications as this right may only rest with the Receiver. As this determination is not before the Court, the Court makes no decision on this issue. Instead, the Court is merely attempting to demonstrate that it is not Plaintiffs who have the right to challenge the assignments.

1934, 47 U.S.C. § 402(b), gives exclusive jurisdiction to review FCC licensing decisions to the D.C. Circuit.

## III. CONCLUSION

As Plaintiffs have failed to exhaust their administrative remedies, they are unable to pursue the FOIA litigation at this time in this Court. Moreover, as they lack standing, they are unable to pursue the requested injunctive relief. Accordingly, the June 12, 2009 Motion of Defendant to Dismiss for Lack of Jurisdiction (Doc. 11) is hereby **GRANTED**; the May 29, 2009 Motion of Plaintiffs for Temporary Restraining Order (Doc. 3) is hereby **DENIED**; The July 13, 2009 Second Motion of Plaintiffs for Temporary Restraining Order (Doc. 14) is hereby **DENIED**; and the July 15, 2009 Motion of Defendant to Strike (Doc. 15) is hereby deemed **MOOT**.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court